[Nos. 86206-1; 86207-9. En Banc.]
Argued March 15, 2012.     Decided August 16, 2012.

Certification From the United States District Court for the Western District of Washington in

Kristin Bain, *Plaintiff*, v. Metropolitan Mortgage Group, Inc., et al., *Defendants*.

AND IN

Kevin Selkowitz, *Plaintiff*, v. Litton Loan Servicing, LP, et al., *Defendants*.

84

*Melissa A. Huelsman* (of *Law Offices of Melissa A. Huelsman*) and *Richard Llewelyn Jones* (of *Richard Llewelyn Jones PS*), for plaintiffs.

*Jennifer L. Tait* and *Nicolas A. Daluiso* (of *Robinson Tait PS*); *Douglas L. Davies* (of *Davies Law Group LLC*); *Heidi E. Buck*; *Russell B. Wuehler* (of *DLA Piper LLP (US)*); *Mary Stearns* (of *McCarthy & Holthus LLP*); and *Ann T. Marshall* and *Kennard M. Goodman* (of *Bishop White Marshall & Weibel PS*) (*Robert J. Pratte* of *Fulbright & Jaworski LLP*, *Robert Norman* of *Houser & Allison*, *Charles T. Meyer*, and *Melissa R. Coutts*, of counsel), for defendants.

*John S. Devlin III* and *Andrew G. Yates* on behalf of Washington Bankers Association, amicus curiae.

*Shawn T. Newman* on behalf of Organization United for Reform (OUR) Washington, amicus curiae.

*James T. Sugarman, Assistant Attorney General*, on behalf of the Attorney General of Washington State, amicus curiae.

*Scott E. Stafne, Ha Thu Dao, Rebecca Thorley, Andrew J. Krawczyk, Timothy C. Robbins*, and *Nicholas D. Fisher* on behalf of Homeowners' Attorneys, amici curiae.

*David A. Leen* and *Geoff Walsh* on behalf of National Consumer Law Center, amicus curiae.

¶1 CHAMBERS, J. — In the 1990s, the Mortgage Electronic Registration System Inc. (MERS) was established by several large players in the mortgage industry. MERS and its allied corporations maintain a private electronic registration system for tracking ownership of mortgage-related debt. This system allows its users to avoid the cost and inconvenience of the traditional public recording system and has facilitated a robust secondary market in mortgage backed debt and securities. Its customers include lenders, debt servicers, and financial institutes that trade in mortgage debt and mortgage backed securities, among others. MERS does not merely track ownership; in many states, including our own, MERS is frequently listed as the "beneficiary" of the deeds of trust that secure its customers' interests in the homes securing the debts. Traditionally, the "beneficiary" of a deed of trust is the lender who has loaned money to the homeowner (or other real property owner). The deed of trust protects the lender by giving the lender the power to nominate a trustee and giving that trustee the power to sell the home if the homeowner's debt is not paid. Lenders, of course, have long been free to sell that secured debt, typically by selling the promissory note signed by the homeowner. Our deed of trust act, chapter 61.24 RCW, recognizes that the beneficiary of a deed of trust at any one time might not be the original lender. The act gives subsequent holders of the debt the benefit of the act by defining "beneficiary" broadly as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2).

¶2 Judge John C. Coughenour of the Federal District Court for the Western District of Washington has asked us to answer three certified questions relating to two home foreclosures pending in King County. In both cases, MERS,

in its role as the beneficiary of the deed of trust, was informed by the loan servicers that the homeowners were delinquent on their mortgages. MERS then appointed trustees who initiated foreclosure proceedings. The primary issue is whether MERS is a lawful beneficiary with the power to appoint trustees within the deed of trust act if it does not hold the promissory notes secured by the deeds of trust. A plain reading of the statute leads us to conclude that only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property. Simply put, if MERS does not hold the note, it is not a lawful beneficiary.

¶3 Next, we are asked to determine the "legal effect" of MERS not being a lawful beneficiary. Unfortunately, we conclude we are unable to do so based upon the record and argument before us.

¶4 Finally, we are asked to determine if a homeowner has a Consumer Protection Act (CPA), chapter 19.86 RCW, claim based upon MERS representing that it is a beneficiary. We conclude that a homeowner may, but it will turn on the specific facts of each case.

## FACTS

¶5 In 2006 and 2007 respectively, Kevin Selkowitz and Kristin Bain bought homes in King County. Selkowitz's deed of trust named First American Title Company as the trustee, New Century Mortgage Corporation as the lender, and MERS as the beneficiary and nominee for the lender. Bain's deed of trust named IndyMac Bank FSB as the lender, Stewart Title Guarantee Company as the trustee, and, again, MERS as the beneficiary. Subsequently, New Century filed for bankruptcy protection, IndyMac went into receivership,[1] and both Bain and Selkowitz fell behind on

---

[1] The FDIC (Federal Deposit Insurance Corporation), in IndyMac's shoes, successfully moved for summary judgment in the underlying cases on the ground

their mortgage payments. In May 2010, MERS, in its role as the beneficiary of the deeds of trust, named Quality Loan Service Corporation as the successor trustee in Selkowitz's case, and Regional Trustee Services as the trustee in Bain's case. A few weeks later the trustees began foreclosure proceedings. According to the attorneys in both cases, the assignments of the promissory notes were not publicly recorded.[2]

¶6 Both Bain and Selkowitz sought injunctions to stop the foreclosures and sought damages under the Washington CPA, among other things.[3] Both cases are now pending in Federal District Court for the Western District of Washington. *Selkowitz v. Litton Loan Servicing, LP*, No. C10-05523--JCC, 2010 WL 3733928, 2010 U.S. Dist. LEXIS 105086 (W.D. Wash. Aug. 31, 2010) (unpublished). Judge Coughenour certified three questions of state law to this court. We have received amici briefing in support of the plaintiffs from the Washington State attorney general, the National Consumer Law Center, the Organization United for Reform (OUR) Washington, and the Homeowners' Attorneys, and amici

---

that there were no assets to pay any unsecured creditors. Doc. 86, at 6 (Summ. J. Mot.) (noting that "the [FDIC] determined that the total assets of the IndyMac Bank Receivership are $63 million while total deposit liabilities are $8.738 billion"); Doc. 108 (Summ. J. Order).

[2] According to briefing filed below, Bain's "[n]ote was assigned to Deutsche Bank by former defendant IndyMac Bank, FSB, and placed in a mortgage loan asset-backed trust pursuant to a Pooling and Servicing Agreement dated June 1, 2007." Doc. 149, at 3. Deutsche Bank filed a copy of the promissory note with the federal court. It appears Deutsche Bank is acting as trustee of a trust that contains Bain's note, along with many others, though the record does not establish what trust this might be.

[3] While the merits of the underlying cases are not before us, we note that Bain contends that the real estate agent, the mortgage broker, and the mortgage originator took advantage of her known cognitive disabilities in order to induce her to agree to a monthly payment they knew or should have known she could not afford; falsified information on her mortgage application; and failed to make legally required disclosures. Bain also asserts that foreclosure proceedings were initiated by IndyMac before IndyMac was assigned the loan and that some of the documents in the chain of title were executed fraudulently. This is confusing because IndyMac was the original lender, but the record suggests (but does not establish) that ownership of the debt had changed hands several times.

briefing in support of the defendants from the Washington Bankers Association (WBA).

## CERTIFIED QUESTIONS

1.  Is Mortgage Electronic Registration Systems, Inc., a lawful "beneficiary" within the terms of Washington's Deed of Trust Act, Revised Code of Washington section 61.24.005(2), if it never held the promissory note secured by the deed of trust?

    [Short answer: No.]

2.  If so, what is the legal effect of Mortgage Electronic Registration Systems, Inc., acting as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?

    [Short answer: We decline to answer based upon what is before us.]

3.  Does a homeowner possess a cause of action under Washington's Consumer Protection Act against Mortgage Electronic Registration Systems, Inc., if MERS acts as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?

    [Short answer: The homeowners may have a CPA action, but each homeowner will have to establish the elements based upon the facts of that homeowner's case.]

Order Certifying Question to the Washington State Supreme Ct. (Certification) at 3-4.

## ANALYSIS

■ ■ ¶7 "The decision whether to answer a certified question pursuant to chapter 2.60 RCW is within the discretion of the court." *Broad v. Mannesmann Anlagenbau, A.G.*, 141 Wn.2d 670, 676, 10 P.3d 371 (2000) (citing *Hoffman v. Regence Blue Shield*, 140 Wn.2d 121, 128, 991 P.2d 77 (2000)). We treat the certified question as a pure question of law and review it de novo. *See, e.g., Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 149 Wn.2d 660, 670, 72 P.3d 151 (2003) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994)).

DEEDS OF TRUST

¶8 Private recording of mortgage-backed debt is a new development in an old and long evolving system. We offer a brief review to put the issues before us in context.

¶9 A mortgage as a mechanism to secure an obligation to repay a debt has existed since at least the 14th century. 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 17.1, at 253 (2d ed. 2004). Often in those early days, the debtor would convey land to the lender via a deed that would contain a proviso that if a promissory note in favor of the lender was paid by a certain day, the conveyance would terminate. *Id.* at 254. English law courts tended to enforce contracts strictly; so strictly, that equity courts began to intervene to ameliorate the harshness of strict enforcement of contract terms. *Id.* Equity courts often gave debtors a grace period in which to pay their debts and redeem their properties, creating an "equitable right to redeem the land during the grace period." *Id.* The equity courts never established a set length of time for this grace period, but they did allow lenders to petition to "foreclose" it in individual cases. *Id.* "Eventually, the two equitable actions were combined into one, granting the period of equitable redemption and placing a foreclosure date on that period." *Id.* at 255 (citing GEORGE E. OSBORNE, HANDBOOK ON THE LAW OF MORTGAGES §§ 1-10 (2d ed. 1970)).

¶10 In Washington, "[a] mortgage creates nothing more than a lien in support of the debt which it is given to secure." *Pratt v. Pratt*, 121 Wash. 298, 300, 209 P. 535 (1922) (citing *Gleason v. Hawkins*, 32 Wash. 464, 73 P. 533 (1903)); *see also* 18 STOEBUCK & WEAVER, *supra*, § 18.2, at 305. Mortgages come in different forms, but we are concerned here only with mortgages secured by a deed of trust on the mortgaged property. These deeds do not convey the property when executed; instead, "[t]he statutory deed of trust is a form of a mortgage." 18 STOEBUCK & WEAVER, *supra*, § 17.3, at 260. "More precisely, it is a three-party transac-

tion in which land is conveyed by a borrower, the 'grantor,' to a 'trustee,' who holds title in trust for a lender, the 'beneficiary,' as security for credit or a loan the lender has given the borrower." *Id.* Title in the property pledged as security for the debt is not conveyed by these deeds, even if "on its face the deed conveys title to the trustee, because it shows that it is given as security for an obligation, it is an equitable mortgage." *Id.* (citing GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 1.6 (4th ed. 2001)).

¶11 When secured by a deed of trust that grants the trustee the power of sale if the borrower defaults on repaying the underlying obligation, the trustee may usually foreclose the deed of trust and sell the property without judicial supervision. *Id.* at 260-61; RCW 61.24.020; RCW 61.12.090; RCW 7.28.230(1). This is a significant power, and we have recently observed that "the [deed of trust] Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales." *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007) (citing *Queen City Sav. & Loan Ass'n v. Mannhalt*, 111 Wn.2d 503, 514, 760 P.2d 350 (1988) (Dore, J., dissenting)). Critically under our statutory system, a trustee is not merely an agent for the lender or the lender's successors. Trustees have obligations to all of the parties to the deed, including the homeowner. RCW 61.24.010(4) ("The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."); *Cox v. Helenius*, 103 Wn.2d 383, 389, 693 P.2d 683 (1985) ("[A] trustee of a deed of trust is a fiduciary for both the mortgagee and mortgagor and must act impartially between them." (citing GEORGE E. OSBORNE, GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 7.21 (1979))).[4] Among other things, "the trustee shall have proof

---

[4] In 2008, the legislature amended the deed of trust act to provide that trustees did not have a fiduciary duty, only the duty of good faith. LAWS OF 2008, ch. 153, § 1, codified in part as RCW 61.24.010(3) ("The trustee or successor trustee shall have

that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust" and shall provide the homeowner with "the name and address of the owner of any promissory notes or other obligations secured by the deed of trust" before foreclosing on an owner-occupied home. RCW 61.24.030(7)(a), (8)(*l*).

■ ¶12 Finally, throughout this process, courts must be mindful of the fact that "Washington's deed of trust act should be construed to further three basic objectives." *Cox*, 103 Wn.2d at 387 (citing Joseph L. Hoffmann, Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington*, 59 WASH. L. REV. 323, 330 (1984)). "First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles." *Id.* (citation omitted) (citing *Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, 491 P.2d 1058 (1971)).

## MERS

¶13 MERS, now a Delaware corporation, was established in the mid 1990s by a consortium of public and private entities that included the Mortgage Bankers Association of America, the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), the Government National Mortgage Association (Ginnie Mae), the American Bankers Association, and the American Land Title Association, among many others.

no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust."). This case does not offer an opportunity to explore the impact of the amendment. A bill was introduced into our state senate in the 2012 session that, as originally drafted, would require every assignment be recorded. S.B. 6070, 62d Leg., Reg. Sess. (Wash. 2012). A substitute bill passed out of committee convening a stakeholder group "to convene to discuss the issue of recording deeds of trust of residential real property, including assignments and transfers, amongst other related issues" and report back to the legislature with at least one specific proposal by December 1, 2012. SUBSTITUTE S.B. 6070, 62d Leg., Reg. Sess. (Wash. 2012).

*See In re MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96 n.2, 861 N.E.2d 81, 828 N.Y.S.2d 266 (2006); Phyllis K. Slesinger & Daniel McLaughlin, *Mortgage Electronic Registration System*, 31 IDAHO L. REV. 805, 807 (1995); Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. CIN. L. REV. 1359, 1361 (2010). It established "a central, electronic registry for tracking mortgage rights [where p]arties will be able to access the central registry (on a need to know basis)." Slesinger & McLaughlin, *supra*, at 806. This was intended to reduce the costs, increase the efficiency, and facilitate the securitization of mortgages and thus increase liquidity. Peterson, *supra*, at 1361.[5] As the New York high court described the process:

> The initial MERS mortgage is recorded in the County Clerk's office with "Mortgage Electronic Registration Systems, Inc." named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system.

*Romaine*, 8 N.Y.3d at 96. MERS "tracks transfers of servicing rights and beneficial ownership interests in mortgage loans by using a permanent 18-digit number called the Mortgage Identification Number." Resp. Br. of MERS at 13 (Bain) (footnote omitted). It facilitates secondary markets in mortgage debt and servicing rights, without the traditional costs of recording transactions with the local county

---

[5] At oral argument, counsel for Bain contended the reason for MERS's creation was a study in 1994 concluding that the mortgage industry would save $77.9 million a year in state and local filing fees. Wash. Supreme Court oral argument, *Bain v. Mortg. Elec. Registration Sys.*, No. 86206-1 (Mar. 15, 2012), at approx. 44 min., *audio recording by* TVW, Washington's Public Affairs Network, *available at* http://www.tvw.org. While saving costs was certainly a motivating factor in its creation, efficiency, secondary markets, and the resulting increased liquidity were other major driving forces leading to MERS's creation. Slesinger & McLaughlin, *supra*, at 806-07.

records offices. Slesinger & McLaughlin, *supra*, at 808; *In re Agard*, 444 B.R. 231, 247 (Bankr. E.D.N.Y. 2011).

¶14 Many loans have been pooled into securitization trusts where they, hopefully, produce income for investors. *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 102-03 (S.D.N.Y. 2011) (discussing process of pooling mortgages into asset backed securities). MERS has helped overcome what had come to be seen as a drawback of the traditional mortgage financing model: lack of liquidity. MERS has facilitated securitization of mortgages bringing more money into the home mortgage market. With the assistance of MERS, large numbers of mortgages may be pooled together as a single asset to serve as security for creative financial instruments tailored to different investors. Some investors may buy the right to interest payments only, others principal only; different investors may want to buy interest in the pool for different durations. *Mortg. Elec. Registration Sys., Inc. v. Azize*, 965 So. 2d 151, 154 n.3 (Fla. Dist. Ct. App. 2007); Dustin A. Zacks, *Standing in Our Own Sunshine: Reconsidering Standing, Transparency, and Accuracy in Foreclosures*, 29 QUINNIPIAC L. REV. 551, 570-71 (2011); Chana Joffe-Walt & David Kestenbaum, *Before Toxie Was Toxic*, NAT'L PUB. RADIO (Sept. 17, 2010, 12:00 a.m.)[6] (discussing formation of mortgage backed securities). In response to the changes in the industries, some states have explicitly authorized lenders' nominees to act on lenders' behalf. *See, e.g.*, *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 491 (Minn. 2009) (noting MINN. STAT. § 507.413 is "frequently called 'the MERS statute' "). As of now, our state has not.

¶15 As MERS itself acknowledges, its system changes "a traditional three party deed of trust [into] a four party deed of trust, wherein MERS would act as the contractually agreed upon beneficiary for the lender and its successors and assigns." MERS Resp. Br. at 20 (Bain). As recently as

---

[6] *Available at* http://www.npr.org/blogs/money/2010/09/16/129916011/before-toxie-was-toxic.

2004, learned commentators William Stoebuck and John Weaver could confidently write that "[a] general axiom of mortgage law is that obligation and mortgage cannot be split, meaning that the person who can foreclose the mortgage must be the one to whom the obligation is due." 18 STOEBUCK & WEAVER, *supra*, § 18.18, at 334. MERS challenges that general axiom. Since then, as the New York bankruptcy court observed recently:

> In the most common residential lending scenario, there are two parties to a real property mortgage — a mortgagee, *i.e.*, a lender, and a mortgagor, *i.e.*, a borrower. With some nuances and allowances for the needs of modern finance this model has been followed for hundreds of years. The MERS business plan, as envisioned and implemented by lenders and others involved in what has become known as the mortgage finance industry, is based in large part on amending this traditional model and introducing a third party into the equation. MERS is, in fact, neither a borrower nor a lender, but rather purports to be both "mortgagee of record" and a "nominee" for the mortgagee. MERS was created to alleviate problems created by, what was determined by the financial community to be, slow and burdensome recording processes adopted by virtually every state and locality. In effect the MERS system was designed to circumvent these procedures. MERS, as envisioned by its originators, operates as a replacement for our traditional system of public recordation of mortgages.

*Agard*, 444 B.R. at 247.

¶16 Critics of the MERS system point out that after bundling many loans together, it is difficult, if not impossible, to identify the current holder of any particular loan, or to negotiate with that holder. While not before us, we note that this is the nub of this and similar litigation and has caused great concern about possible errors in foreclosures, misrepresentation, and fraud. Under the MERS system, questions of authority and accountability arise, and determining who has authority to negotiate loan modifications and who is accountable for misrepresentation and fraud

becomes extraordinarily difficult.[7] The MERS system may be inconsistent with our second objective when interpreting the deed of trust act: that "the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure." *Cox*, 103 Wn.2d at 387 (citing *Ostrander*, 6 Wn. App. 28).

¶17 The question, to some extent, is whether MERS and its associated business partners and institutions can both replace the existing recording system established by Washington statutes and still take advantage of legal procedures established in those same statutes. With this background in mind, we turn to the certified questions.

## I. DEED OF TRUST BENEFICIARIES

¶18 Again, the federal court has asked:

1. Is Mortgage Electronic Registration Systems, Inc., a lawful "beneficiary" within the terms of Washington's Deed of Trust Act, Revised Code of Washington section 61.24.005(2), if it never held the promissory note secured by the deed of trust?

Certification at 3.

### A. Plain Language

¶19 Under the plain language of the deed of trust act, this appears to be a simple question. Since 1998, the deed of trust act has defined a "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the

---

[7] MERS insists that borrowers need know only the identity of the servicers of their loans. However, there is considerable reason to believe that servicers will not or are not in a position to negotiate loan modifications or respond to similar requests. *See generally* Diane E. Thompson, *Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications*, 86 WASH. L. REV. 755 (2011); Dale A. Whitman, *How Negotiability Has Fouled Up the Secondary Mortgage Market, and What To Do About It*, 37 PEPP. L. REV. 737, 757-58 (2010). Lack of transparency causes other problems. *See generally U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 941 N.E.2d 40 (2011) (noting difficulties in tracing ownership of the note).

same as security for a different obligation." LAWS OF 1998, ch. 295, § 1(2), *codified as* RCW 61.24.005(2).[8] Thus, in the terms of the certified question, if MERS never "held the promissory note," then it is not a "lawful 'beneficiary.' "

¶20 MERS argues that under a more expansive view of the act, it meets the statutory definition of "beneficiary." It notes that the definition section of the deed of trust act begins by cautioning that its definitions apply " *'unless the context clearly requires otherwise.' "* Resp. Br. of MERS at 19 (Bain) (quoting RCW 61.24.005). MERS argues that "[t]*he context* here *requires* that MERS be recognized as a proper 'beneficiary' under the Deed of Trust [Act]. The context here is that the Legislature was creating a more efficient default remedy for lenders, not putting up barriers to foreclosure." *Id.* It contends that the parties were legally entitled to contract as they see fit, and that the "the parties contractually agreed that the 'beneficiary' under the Deed of Trust was 'MERS' and it is in that context that the Court should apply the statute." *Id.* at 20 (emphasis omitted).

¶21 The "unless the context clearly requires otherwise" language MERS relies upon is a common phrase that the legislative bill drafting guide recommends be used in the introductory language in all statutory definition sections. *See* STATUTE LAW COMM., OFFICE OF THE CODE REVISER, BILL

---

[8] Perhaps presciently, the Senate Bill Report on the 1998 amendment noted that "[p]ractice in this area has departed somewhat from the strict statutory requirements, resulting in a perceived need to clarify and update the act." S.B. REP. on ENGROSSED SUBSTITUTE S.B. 6191, 55th Leg., Reg. Sess. (Wash. 1998). The report also helpfully summarizes the legislature's understanding of deeds of trust as creating three-party mortgages:

**Background:** A deed of trust is a financing tool created by statute which is, in effect, a triparty mortgage. The real property owner or purchaser (the grantor of the deed of trust) conveys the property to an independent trustee, who is usually a title insurance company, for the benefit of a third party (the lender) to secure repayment of a loan or other debt from the grantor (borrower) to the beneficiary (lender). The trustee has the power to sell the property nonjudicially in the event of default, or, alternatively, foreclose the deed of trust as a mortgage.

*Id.* at 1.

DRAFTING GUIDE 2011.[9] A search of the unannotated Revised Code of Washington indicates that this statutory language has been used over 600 times. Despite its ubiquity, we have found no case—and MERS draws our attention to none— where this common statutory phrase has been read to mean that the *parties* can alter statutory provisions by contract, as opposed to the act itself suggesting a different definition might be appropriate for a specific statutory provision. We have interpreted the boilerplate language "[t]he definitions in this section apply throughout the chapter unless the context clearly requires otherwise" only once, and then in the context of determining whether a general court-martial qualified as a prior conviction for purposes of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *See State v. Morley*, 134 Wn.2d 588, 952 P.2d 167 (1998). There, the two defendants challenged the use of their prior general courts-martial on the ground that the SRA defined "conviction" as " 'an adjudication of guilt pursuant to Titles 10 or 13 RCW.' " *Morley*, 134 Wn.2d at 595 (quoting RCW 9.94A-.030(9)). Since, the defendants reasoned, their courts-martial were not "pursuant to Titles 10 or 13 RCW," they should not be considered criminal history. We noted that the SRA frequently treated out-of-state convictions (which would also not be pursuant to Titles 10 or 13 RCW) as convictions and rejected the argument since the specific statutory context required a broader definition of the word "convictions" than the definition section provided. *Id.* at 598. MERS has cited no case, and we have found none, that holds that *extrastatutory* conditions can create a context where a different definition of defined terms would be appropriate. We do not find this argument persuasive.

¶22 MERS also argues that it meets the statutory definition itself. It notes, correctly, that the legislature did not limit "beneficiary" to the holder of the promissory note: instead, it is "the holder of the *instrument or document*

[9] *Available at* http://www.leg.wa.gov/CodeReviser/Pages/bill_drafting_guide.aspx (last visited Aug. 7, 2012).

evidencing the obligations secured by the deed of trust." RCW 61.24.005(2) (emphasis added). It suggests that " 'instrument' " and " 'document' " are broad terms and that "in the context of a residential loan, undoubtedly the Legislature was referring to all of the loan documents that make up the loan transaction — *i.e.*, the note, the deed of trust, and any other rider or document that sets forth the rights and obligations of the parties under the loan," and that " 'obligation' " must be read to include any financial obligation under any document signed in relation to the loan, including "attorneys' fees and costs incurred in the event of default." Resp. Br. of MERS at 21-22 (Bain). In these particular cases, MERS contends that it is a proper beneficiary because, in its view, it is "indisputably the 'holder' of the Deed of Trust." *Id.* at 22. It provides no authority for its characterization of itself as "indisputably the 'holder' " of the deeds of trust.

¶23  The homeowners, joined by the Washington attorney general, do dispute MERS' characterization of itself as the holder of the deeds of trust. Starting from the language of RCW 61.24.005(2) itself, the attorney general contends that "[t]he 'instrument' obviously means the promissory note because the only other document in the transaction is the deed of trust and it would be absurd to read this definition as saying that ' "beneficiary means the holder of the deed of trust secured by the deed of trust." ' " Br. of Amicus Att'y General (AG Br.) at 2-3 (quoting RCW 61.24.005(2)). We agree that an interpretation "beneficiary" that has the deed of trust securing itself is untenable.

¶24  Other portions of the deed of trust act bolster the conclusion that the legislature meant to define "beneficiary" to mean the actual holder of the promissory note or other debt instrument. In the same 1998 bill that defined "beneficiary" for the first time, the legislature amended RCW 61.24.070 (which had previously forbidden the trustee alone from bidding at a trustee sale) to provide:

(1) The trustee may not bid at the trustee's sale. Any other person, including the beneficiary, may bid at the trustee's sale.

(2) The trustee shall, at the request of the beneficiary, credit toward the beneficiary's bid all or any part of the monetary obligations secured by the deed of trust. If the beneficiary is the purchaser, any amount bid by the beneficiary in excess of the amount so credited shall be paid to the trustee in the form of cash, certified check, cashier's check, money order, or funds received by verified electronic transfer, or any combination thereof. If the purchaser is not the beneficiary, the entire bid shall be paid to the trustee in the form of cash, certified check, cashier's check, money order, or funds received by verified electronic transfer, or any combination thereof.

Laws of 1998, ch. 295, § 9, *codified as* RCW 61.24.070. As Bain notes, this provision makes little sense if the beneficiary does not hold the note. Bain Reply to Resp. to Opening Br. at 11. In essence, it would authorize the nonholding beneficiary to credit to its bid funds to which it had no right. However, if the beneficiary is defined as the entity that holds the note, this provision straightforwardly allows the noteholder to credit some or all of the debt to the bid. Similarly, in the commercial loan context, the legislature has provided that "[a] beneficiary's acceptance of a deed in lieu of a trustee's sale under a deed of trust securing a commercial loan exonerates the guarantor from any liability for the debt secured thereby except to the extent the guarantor otherwise agrees as part of the deed in lieu transaction." RCW 61.24.100(7). This provision would also make little sense if the beneficiary did not hold the promissory note that represents the debt.

¶25 Finding that the beneficiary must hold the promissory note (or other "instrument or document evidencing the obligation secured") is also consistent with recent legislative findings to the foreclosure fairness act of 2011, Laws of 2011, ch. 58, § 3(2). The legislature found:

[(1)] (a) The rate of home foreclosures continues to rise to unprecedented levels, both for prime and subprime loans, and a

new wave of foreclosures has occurred due to rising unemployment, job loss, and higher adjustable loan payments;

. . . .

(2) Therefore, the legislature intends to:

. . . .

(b) Create a framework *for homeowners and beneficiaries to communicate with each other* to reach a resolution and avoid foreclosure whenever possible; and

(c) Provide a process for foreclosure mediation.

LAWS OF 2011, ch. 58, § 1 (emphasis added). There is no evidence in the record or argument that suggests MERS has the power "to reach a resolution and avoid foreclosure" on behalf of the noteholder, and there is considerable reason to believe it does not. Counsel informed the court at oral argument that MERS does not negotiate on behalf of the holders of the note.[10] If the legislature intended to authorize nonnoteholders to act as beneficiaries, this provision makes little sense. However, if the legislature understood "beneficiary" to mean "noteholder," then this provision makes considerable sense. The legislature was attempting to create a framework where the stakeholders could negotiate a deal in the face of changing conditions.

¶26 We will also look to related statutes to determine the meaning of statutory terms. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002). Both the plaintiffs and the attorney general draw our attention to the definition of "holder" in the Uniform Commercial Code (UCC), which was adopted in the same year as the deed of trust act. *See* LAWS OF 1965, Ex. Sess., ch. 157 (UCC); LAWS OF 1965, ch. 74 (deeds of trust act); Selkowitz Opening Br. at 13; AG Br. at 11-12. Stoebuck and Weaver note that the transfer of mortgage backed obligations is governed by the UCC, which certainly suggests the UCC provisions may be instructive for other purposes. 18 STOEBUCK & WEAVER, *supra*, § 18.18, at 334. The UCC provides:

---

[10] Wash. Supreme Court oral argument, *supra*, at approx. 34 min., 58 sec.

"Holder[,]" with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession. "Holder" with respect to a document of title means the person in possession if the goods are deliverable to bearer or to the order of the person in possession.

Former RCW 62A.1-201(20) (2001).[11] The UCC also provides:

"Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

RCW 62A.3-301. The plaintiffs argue that our interpretation of the deed of trust act should be guided by these UCC definitions, and thus a beneficiary must either actually possess the promissory note or be the payee. *E.g.*, Selkowitz Opening Br. at 14. We agree. This accords with the way the term "holder" is used across the deed of trust act and the Washington UCC. By contrast, MERS's approach would require us to give "holder" a different meaning in different related statutes and construe the deed of trust act to mean that a deed of trust may secure itself or that the note follows the security instrument. Washington's deed of trust act contemplates that the security instrument will follow the note, not the other way around. MERS is not a "holder" under the plain language of the statute.

### B. Contract and Agency

¶27 In the alternative, MERS argues that the borrowers should be held to their contracts, and since they agreed in the

---

[11] Several portions of chapter 61.24 RCW were amended by the 2012 legislature while this case was under our review.

deeds of trust that MERS would be the beneficiary, it should be deemed to be the beneficiary. *E.g.*, Resp. Br. of MERS at 24 (Bain). Essentially, it argues that we should insert the parties' agreement into the statutory definition. It notes that another provision of Title 61 RCW specifically allows parties to insert side agreements or conditions into mortgages. RCW 61.12.020 ("Every such mortgage, when otherwise properly executed, shall be deemed and held a good and sufficient conveyance and mortgage to secure the payment of the money therein specified. The parties may insert in such mortgage any lawful agreement or condition.").

¶28 MERS argues we should be guided by *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011). In *Cervantes*, the Ninth Circuit Court of Appeals affirmed dismissal of claims for fraud, intentional infliction of emotional distress, and violations of the federal Truth in Lending Act (15 U.S.C. § 1635) and the Arizona Consumer Fraud Act (ARIZ. REV. STAT. § 44-1522) against MERS, Countrywide Home Loans, and other financial institutions. *Id.* at 1041. We do not find *Cervantes* instructive. *Cervantes* was a putative class action that was dismissed on the pleadings for a variety of reasons, the vast majority of which are irrelevant to the issues before us. *Id.* at 1038. After dismissing the fraud claim for failure to allege facts that met all nine elements of a fraud claim in Arizona, the Ninth Circuit observed that MERS's role was plainly laid out in the deeds of trust. *Id.* at 1042. Nowhere in *Cervantes* does the Ninth Circuit suggest that the parties could contract around the statutory terms.

¶29 MERS also seeks support in a Virginia quiet title action. *Horvath v. Bank of N.Y., NA*, 641 F.3d 617, 620 (4th Cir. 2011). After Horvath had become delinquent in his mortgage payments and after a foreclosure sale, Horvath sued the holder of the note and MERS, among others, on a variety of claims, including a claim to quiet title in his favor on the ground that various financial entities had by " 'splitting . . . the pieces of' his mortgage . . . caused 'the Deeds of

Trust [to] split from the Notes and [become] unenforceable.' " *Id.* at 620 (third and fourth alterations in original) (quoting complaint). The Fourth Circuit rejected Horvath's quiet title claim out of hand, remarking:

> It is difficult to see how Horvath's arguments could possibly be correct. Horvath's note plainly constitutes a negotiable instrument under Va. Code Ann. § 8.3A-104. That note was endorsed in blank, meaning it was bearer paper and enforceable by whoever possessed it. *See* Va. Code Ann. § 8.3A-205(b). And BNY [(Bank of New York)] possessed the note at the time it attempted to foreclose on the property. Therefore, once Horvath defaulted on the property, Virginia law straightforwardly allowed BNY to take the actions that it did.

*Id.* at 622. There is no discussion anywhere in *Horvath* of any statutory definition of "beneficiary." While the opinion discussed transferability of notes under the UCC as adopted in Virginia, there is only the briefest mention of the Virginia deed of trust act. *Compare Horvath*, 641 F.3d at 621-22 (citing various provisions of VA. CODE ANN. Titles 8.1A, 8.3A (UCC)), *with id.* at 623 n.3 (citing VA. CODE. ANN. § 55-59(7) (discussing deed of trust foreclosure proceedings)). We do not find *Horvath* helpful.

¶30 Similarly, MERS argues that lenders and their assigns are entitled to name it as their agent. *E.g.*, Resp. Br. of MERS at 29-30 (Bain). That is likely true and nothing in this opinion should be construed to suggest an agent cannot represent the holder of a note. Washington law, and the deed of trust act itself, approves of the use of agents. *See, e.g.*, former RCW 61.24.031(1)(a) (2011) ("A trustee, beneficiary, *or authorized agent* may not issue a notice of default . . . until . . . ." (emphasis added)). MERS notes, correctly, that we have held that "an agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control." *Moss v. Vadman*, 77 Wn.2d 396, 402-03, 463 P.2d 159 (1970) (citing *Matsumura v. Eilert*, 74 Wn.2d 362, 444 P.2d 806 (1968)).

¶31 But *Moss* also observed that "[w]e have repeatedly held that a prerequisite of an agency is *control* of the agent by the principal." *Id.* at 402 (emphasis added) (citing *McCarty v. King County Med. Serv. Corp.*, 26 Wn.2d 660, 175 P.2d 653 (1946)). While we have no reason to doubt that the lenders and their assigns control MERS, agency requires a specific principal that is accountable for the acts of its agent. If MERS is an agent, its principals in the two cases before us remain unidentified.[12] MERS attempts to sidestep this portion of traditional agency law by pointing to the language in the deeds of trust that describe MERS as "acting solely as a nominee for Lender and Lender's successors and assigns." Doc. 131-2, at 2 (Bain deed of trust); Doc. 9-1, at 3 (Selkowitz deed of trust.); *see, e.g.*, Resp. Br. of MERS at 30 (Bain). But MERS offers no authority for the implicit proposition that the lender's nomination of MERS as a nominee rises to an agency relationship with successor noteholders.[13] MERS fails to identify the entities that control and are accountable for its actions. It has not established that it is an agent for a lawful principal.

¶32 This is not the first time that a party has argued that we should give effect to its contractual modification of a statute. *See Godfrey v. Hartford Ins. Cas. Co.*, 142 Wn.2d 885, 16 P.3d 617 (2001); *see also Nat'l Union Ins. Co. of*

---

[12] At oral argument, counsel for MERS was asked to identify its principals in the cases before us and was unable to do so. Wash. Supreme Court oral argument, *supra*, at approx. 23 min., 23 sec.

[13] The record suggests, but does not establish, that MERS often acted as an agent of the loan servicer who would communicate the fact of a default and request appointment of a trustee, but is silent on whether the holder of the note would play any controlling role. Doc. 69-2, at 4-5 (describing process). For example, in Selkowitz's case, "the Appointment of Successor Trustee" was signed by Debra Lyman as assistant vice president of MERS Inc. Doc. 8-1, at 17. There was no evidence that Lyman worked for MERS, but the record suggests she is 1 of 20,000 people who have been named assistant vice president of MERS. *See* Br. of Amicus National Consumer Law Center at 9 n.18 (citing Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111, 118 (2011)). Lender Processing Service Inc., which processed paperwork relating to Bain's foreclosure, seems to function as a middleman between loan servicers, MERS, and law firms that execute foreclosures. Docs. 69-1 through 69-3.

*Pittsburgh v. Puget Sound Power & Light*, 94 Wn. App. 163, 177, 972 P.2d 481 (1999) (holding a business and a utility could not contract around statutory uniformity requirements); *State ex rel. Standard Optical Co. v. Superior Court*, 17 Wn.2d 323, 329, 135 P.2d 839 (1943) (holding that a corporation could not avoid statutory limitations on scope of practice by contract with those who could so practice); *cf. Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1011-12 (9th Cir. 1997) (noting that Microsoft's agreement with certain workers that they were not employees was not binding). In *Godfrey*, Hartford Casualty Insurance Company had attempted to pick and choose what portions of Washington's uniform arbitration act, chapter 7.04A RCW, it and its insured would use to settle disputes. *Godfrey*, 142 Wn.2d at 889. The court noted that parties were free to decide whether to arbitrate and what issues to submit to arbitration, but "once an issue is submitted to arbitration . . . Washington's [arbitration] Act applies." *Id.* at 894. By submitting to arbitration, "they have activated the entire chapter and the policy embodied therein, not just the parts that are useful to them." *Id.* at 897. The legislature has set forth in great detail how nonjudicial foreclosures may proceed. We find no indication the legislature intended to allow the parties to vary these procedures by contract. We will not allow waiver of statutory protections lightly. MERS did not become a beneficiary by contract or under agency principles.

## C. Policy

¶33 MERS argues, strenuously, that as a matter of public policy it should be allowed to act as the beneficiary of a deed of trust because "the Legislature certainly did not intend for home loans in the State of Washington to become unsecured, or to allow defaulting home loan borrowers to avoid non-judicial foreclosure, through manipulation of the defined terms in the [deed of trust] Act." Resp. Br. of MERS at 23 (Bain). One difficulty is that it is not the plaintiffs that

manipulated the terms of the act: it was whoever drafted the forms used in these cases. There are certainly significant benefits to the MERS approach but there may also be significant drawbacks. The legislature, not this court, is in the best position to assess policy considerations. Further, although not considered in this opinion, nothing herein should be interpreted as preventing the parties to proceed with judicial foreclosures. That must await a proper case.

## D. Other Courts

¶34 Unfortunately, we could find no case, and none have been drawn to our attention, that meaningfully discusses a statutory definition like that found in RCW 61.24.005(2). MERS asserts that "the United States District Court for the Western District of Washington has recently issued a series of opinions on the very issues before the Court, finding in favor of MERS." Resp. Br. of MERS at 35-36 (Bain) (citing *Daddabbo v. Countrywide Home Loans, Inc.*, No. C09-1417RAJ, 2010 WL 2102485, 2010 U.S. Dist. LEXIS 50223 (W.D. Wash. May 20, 2010) (unpublished); *St. John v. Nw Tr. Servs., Inc.*, No. C11-5382BHS, 2011 WL 4543658, 2011 U.S. Dist. LEXIS 111690 (W.D. Wash. Sept. 29, 2011, Dismissal Order) (unpublished); *Vawter v. Quality Loan Servicing Corp. of Wash.*, 707 F. Supp. 2d 1115 (W.D. Wash. 2010)). These citations are not well taken. *Daddabbo* never mentions RCW 61.24.005(2). *St. John* mentions it in passing but devotes no discussion to it. 2011 WL 4543658, at *3, 2011 U.S. Dist. LEXIS 111690, at *8-9. *Vawter* mentions RCW 61.24.005(2) once, in a block quote from an unpublished case, without analysis. We do not find these cases helpful.[14]

---

[14] MERS string cites eight more cases, six of them unpublished that, it contends, establishes that other courts have found that MERS can be beneficiary under a deed of trust. Resp. Br. of MERS (Selkowitz) at 29 n.98. The six unpublished cases do not meaningfully analyze our statutes. The two published cases, *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 121 Cal. Rptr. 3d 819 (2011), and *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177 (N.D. Cal. 2009), are out of California, and neither have any discussion of the California statutory definition of "beneficiary." The Fourth District of the California Court of Appeals in *Gomes* does reject the plaintiff's theory that the beneficiary had to

¶35 Amicus WBA draws our attention to three cases where state supreme courts have held MERS could exercise the rights of a beneficiary. Amicus Br. of WBA at 12 (Bain) (citing *Trotter v. Bank of N.Y. Mellon*, No. 38022, 2012 WL 206004, 2012 Ida. LEXIS 33 (Idaho Jan. 25, 2012) (unpublished), *withdrawn and superseded by* 152 Idaho 842, 275 P.3d 857 (2012); *Residential Funding Co. v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011); *RMS Residential Props., LLC v. Miller*, 303 Conn. 224, 226, 32 A.3d 307 (2011)). *But see Agard*, 444 B.R. at 247 (collecting contrary cases); *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623-24 (Mo. App. 2009) (holding MERS lacked authority to make a valid assignment of the note). But none of these cases, on either side, discuss a statutory definition of "beneficiary" that is similar to ours, and many are decided on agency grounds that are not before us. We do not find them helpful either.

¶36 We answer the first certified question "no," based on the plain language of the statute. MERS is an ineligible " 'beneficiary' within the terms of the Washington Deed of Trust Act," if it never held the promissory note or other debt instrument secured by the deed of trust.

## II. EFFECT

¶37 The federal court has also asked us:

2. If so, what is the legal effect of Mortgage Electronic Registration Systems, Inc., acting as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?

Certification at 3.

¶38 We conclude that we cannot decide this question based upon the record and briefing before us. To assist the

establish a right to foreclose in a nonjudicial foreclosure action, but the California courts are split. Six weeks later, the Third District found that the beneficiary was required to show it had the right to foreclose, and a simple declaration from a bank officer was insufficient. *Herrera v. Deutsche Bank Nat'l Trust Co.*, 196 Cal. App. 4th 1366, 1378, 127 Cal. Rptr. 3d 362 (2011).

certifying court, we will discuss our reasons for reaching this conclusion.

¶39 MERS contends that if it is acting as an unlawful beneficiary, its status should have no effect: "All that it would mean is that there was a technical violation of the Deed of Trust Act that all parties were aware of when the loan was originally entered into." Resp. Br. of MERS at 41 (Bain). "At most . . . MERS would simply need to assign its legal interest in the Deed of Trust to the lender before the lender proceeded with foreclosure." *Id.* at 41-42. The difficulty with MERS's argument is that if in fact MERS is not the beneficiary, then the equities of the situation would likely (though not necessarily in every case) require the court to deem that the real beneficiary is the lender whose interests were secured by the deed of trust or that lender's successors.[15] If the original lender had sold the loan, that purchaser would need to establish ownership of that loan, either by demonstrating that it actually held the promissory note or by documenting the chain of transactions. Having MERS convey its "interests" would not accomplish this.

¶40 In the alternative, MERS suggests that if we find a violation of the act, "MERS should be required to assign its interest in any deed of trust to the holder of the promissory note, and have that assignment recorded in the land title records, before any non-judicial foreclosure could take place." Resp. Br. of MERS at 44 (Bain). But if MERS is not the beneficiary as contemplated by Washington law, it is unclear what rights, if any, it has to convey. Other courts have rejected similar suggestions. *Bellistri*, 284 S.W.3d at 624 (citing *George v. Surkamp*, 336 Mo. 1, 9, 76 S.W.2d 368

---

[15] *See* 18 STOEBUCK & WEAVER, *supra*, § 17.3, at 260 (noting that a deed of trust "is a three-party transaction in which land is conveyed by a borrower, the 'grantor,' to a 'trustee,' who holds title in trust for a lender, the 'beneficiary,' as security for credit or a loan the lender has given the borrower"); *see also U.S. Bank NA v. Ibanez*, 458 Mass. 637, 941 N.E.2d 40 (2011) (holding bank had to establish it was the mortgage holder at the time of foreclosure in order to clear title through evidence of the chain of transactions).

(1934)). Again, the identity of the beneficiary would need to be determined. Because it is the repository of the information relating to the chain of transactions, MERS would be in the best position to prove the identity of the holder of the note and beneficiary.

¶41 Partially relying on the *Restatement (Third) of Property: Mortgages* § 5.4 (1997), Selkowitz suggests that the proper remedy for a violation of chapter 61.24 RCW "should be rescission, which does not excuse Mr. Selkowitz from payment of any monetary obligation, but merely precludes non-judicial foreclosure of the subject Deed of Trust. Moreover, if the subject Deed of Trust is void, Mr. Selkowitz should be entitled to quiet title to his property." Pl.'s Opening Br. at 40 (Selkowitz). It is unclear what he believes should be rescinded. He offers no authority in his opening brief for the suggestion that listing an ineligible beneficiary on a deed of trust would render the deed void and entitle the borrower to quiet title. He refers to cases where the lack of a grantee has been held to void a deed, but we do not find those cases helpful. In one of those cases, the New York court noted, "No mortgagee or obligee was named in [the security agreement], and no right to maintain an action thereon, or to enforce the same, was given therein to the plaintiff or any other person. It was, *per se*, of no more legal force than a simple piece of blank paper." *Chauncey v. Arnold*, 24 N.Y. 330, 335 (1862). But the deeds of trust before us name all necessary parties and more.

¶42 Selkowitz argues that MERS and its allied companies have split the deed of trust from the obligation, making the deed of trust unenforceable. While that certainly *could* happen, given the record before us we have no evidence that it did. If, for example, MERS is in fact an agent for the holder of the note, likely no split would have happened.

¶43 In the alternative, Selkowitz suggests the court create an equitable mortgage in favor of the noteholder. Pl.'s Opening Br. at 42 (Selkowitz). If in fact such a split occurred, the *Restatement* suggests that would be an appro-

priate resolution. RESTATEMENT (THIRD) OF PROPERTY: MORT-GAGES § 5.4 reporters' note at 386 (1997) (citing *Lawrence v. Knap*, 1 Root (Conn.) 248 (1791)). But since we do not know whether or not there has been a split of the obligation from the security instrument, we have no occasion to consider this remedy.

¶44 Bain specifically suggests we follow the lead of the Kansas Supreme Court in *Landmark National Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009). In *Landmark*, the homeowner, Kesler, had used the same piece of property to secure two loans, both recorded with the county. *Id.* Kesler went bankrupt and agreed to surrender the property. *Id.* One of the two lenders filed a petition to foreclose and served both Kesler and the other recorded lender, but not MERS. *Id.* at 531. The court concluded that MERS had no interest in the property and thus was not entitled to notice of the foreclosure sale or entitled to intervene in the challenge to it. *Id.* at 544-45; *accord Mortg. Elec. Registration Sys., Inc. v. Sw. Homes of Ark.*, 2009 Ark. 152, 301 S.W.3d 1 (2009). Bain suggests we follow *Landmark*, but *Landmark* has nothing to say about the effect of listing MERS as a beneficiary. We agree with MERS that it has no bearing on the case before us. Resp. Br. of MERS at 39 (Bain).

¶45 Bain also notes, albeit in the context of whether MERS could be a beneficiary without holding the promissory note, that our Court of Appeals held that " '[i]f the obligation for which the mortgage was given fails for some reason, the mortgage is unenforceable.' " Pl. Bain's Opening Br. (Bain Op. Br.) at 34 (quoting *Fid. & Deposit Co. of Md. v. Ticor Title Ins. Co.*, 88 Wn. App. 64, 68, 943 P.2d 710 (1997)). She may be suggesting that the listing of an erroneous beneficiary on the deed of trust should sever the security interest from the debt. If so, the citation to *Fidelity* is not helpful. In *Fidelity*, the court was faced with what appeared to be a scam. William and Mary Etter had executed a promissory note, secured by a deed of trust, to

Citizen's National Mortgage, which sold the note to Affiliated Mortgage Company. Citizen's also *forged* the Etters' name on *another* promissory note and sold it to another buyer, along with what appeared to be an assignment of the deed of trust, who ultimately assigned it to Fidelity. The buyer of the forged note recorded its interests first, and Fidelity claimed it had priority to the Etters' mortgage payments. The Court of Appeals properly disagreed. *Fidelity*, 88 Wn. App. at 66-67. It held that forgery mattered and that Fidelity had no claim on the Etters' mortgage payments. *Id.* at 67-68. It did *not* hold that the forgery relieved the Etters of paying the mortgage to the actual holder of the promissory note.

¶46 MERS states that any violation of the deed of trust act "should not result in a void deed of trust, both legally and from a public policy standpoint." Resp. Br. of MERS at 44. While we tend to agree, resolution of the question before us depends on what actually occurred with the loans before us, and that evidence is not in the record. We note that Bain specifically acknowledges in her response brief that she "understands that she is going to have to make up the mortgage payments that have been missed," which suggests she is not seeking to clear title without first paying off the secured obligation. Pl. Bain's Reply Br. at 1. In oral argument, Bain suggested that if the holder of the note were to properly transfer the note to MERS, MERS could proceed with foreclosure.[16] This may be true. We can answer questions of law but not determine facts. We reluctantly decline to answer the second certified question on the record before us.

---

[16] Wash. Supreme Court oral argument, *supra*, at approx. 8 min., 24 sec.

## III. CPA ACTION

¶47 Finally, the federal court asked:

3. Does a homeowner possess a cause of action under Washington's Consumer Protection Act against Mortgage Electronic Registration Systems, Inc., if MERS acts as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?

Certification at 4. Bain contends that MERS violated the CPA when it acted as a beneficiary. Bain Op. Br. at 43.[17]

¶48 To prevail on a CPA action, the plaintiff must show "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). MERS does not dispute all the elements. Resp. Br. of MERS at 45; Resp. Br. of MERS (Selkowitz) at 37. We will consider only the ones that it does.

### A. Unfair or Deceptive Act or Practice

¶49 As recently summarized by the Court of Appeals:

To prove that an act or practice is deceptive, neither intent nor actual deception is required. The question is whether the conduct has "the *capacity* to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wn.2d at 785. Even accurate information may be deceptive " 'if there is a representation, omission or practice that is likely to mislead.' " *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 50, 204 P.3d 885

---

[17] The trustee, Quality Loan Service Corporation of Washington Inc., has asked that we hold that no cause of action under the deed of trust act or the CPA "can be stated against a trustee that relies in good faith on MERS' apparent authority to appoint a successor trustee, as beneficiary of the deed of trust." Br. of Def. Quality Loan Service at 4 (Selkowitz). As this is far outside the scope of the certified question, we decline to consider it.

(2009) (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)). Misrepresentation of the material terms of a transaction or the failure to disclose material terms violates the CPA. *State v. Ralph Williams' Nw. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 305-09, 553 P.2d 423 (1976). Whether particular actions are deceptive is a question of law that we review de novo. *Leingang v. Pierce County Med. Bureau*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

*State v. Kaiser*, 161 Wn. App. 705, 719, 254 P.3d 850 (2011). MERS contends that the only way that a plaintiff can meet this first element is by showing that its conduct was deceptive and that the plaintiffs cannot show this because "MERS fully described its role to Plaintiff through the very contract document that Plaintiff signed." Resp. Br. of MERS at 46 (Selkowitz). Unfortunately, MERS does not elaborate on that statement, and nothing on the deed of trust itself would alert a careful reader to the fact that MERS would *not* be holding the promissory note.

¶50 The attorney general of this state maintains a consumer protection division and has considerable experience and expertise in consumer protection matters. As amicus, the attorney general contends that MERS is claiming to be the beneficiary "when it knows or should know that under Washington law it must hold the note to be the beneficiary" and seems to suggest we hold that claim is per se deceptive and/or unfair. AG Br. at 14. This contention finds support in *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 170 P.3d 10 (2007), where we found a telephone company had committed a deceptive act as a matter of law by listing a surcharge "on a portion of the invoice that included state and federal tax charges." *Id.* at 76. We found that placement had " 'the capacity to deceive a substantial portion of the public' " into believing the fee was a tax. *Id.* (emphasis omitted) (quoting *Hangman Ridge*, 105 Wn.2d at 785). Our attorney general also notes that the assignment of the deed of trust that MERS uses purports to transfer its beneficial interest on behalf of *its own* succes-

sors and assigns, not on behalf of any principal. The assignment used in Bain's case, for example, states:

> FOR VALUE RECEIVED, the undersigned, Mortgage Electronic Registration Systems, Inc. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, by these presents, grants, bargains, sells, assigns, transfers, and sets over unto INDYMAC FEDERAL BANK, FSB all beneficial interest under that certain Deed of Trust dated 3/9/2007.

Doc. 1, Ex. A to Huelsman Decl. This undermines MERS's contention that it acts only as an agent for a lender/principal and its successors and it "conceals the identity of whichever loan holder MERS purports to be acting for when assigning the deed of trust." AG Br. at 14. The attorney general identifies other places where MERS purports to be acting as the agent for its own successors, not for some principal. *Id.* at 15 (citing Doc. 1, Ex. B). Many other courts have found it deceptive to claim authority when no authority existed and to conceal the true party in a transaction. *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 159 P.3d 10 (2007); *Floersheim v. Fed. Trade Comm'n*, 411 F.2d 874, 876-77 (9th Cir. 1969). In *Stephens*, an insurance company that had paid under an uninsured motorist policy hired a collections agency to seek reimbursement from the other parties in a covered accident. *Stephens*, 138 Wn. App. at 161. The collection agency sent out aggressive notices that listed an "amount due" and appeared to be collection notices for debt due, though a careful scrutiny would have revealed that they were effectively making subrogation claims. *Id.* at 166-68. The court found that "characterizing an unliquidated [tort] claim as an 'amount due' has the capacity to deceive." *Id.* at 168.

¶51 While we are unwilling to say it is per se deceptive, we agree that characterizing MERS as the beneficiary has the capacity to deceive and thus, for the purposes of answering the certified question, presumptively the first element is met.

## B. Public Interest Impact

¶52 MERS contends that plaintiffs cannot show a public interest impact because, it contends, each plaintiff is challenging "MERS's role as the beneficiary under Plaintiff's Deed of Trust in the context of the foreclosure proceedings on Plaintiff's property." Resp. Br. of MERS at 40 (Selkowitz) (emphasis omitted). But there is considerable evidence that MERS is involved with an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide. John R. Hooge & Laurie Williams, *Mortgage Electronic Registration Systems, Inc.: A Survey of Cases Discussing MERS' Authority to Act*, NORTON BANKR. L. ADVISORY No. 8, at 21 (Aug. 2010). If in fact the language is unfair or deceptive, it would have a broad impact. This element is also presumptively met.

## C. Injury

¶53 MERS contends that the plaintiffs can show no injury caused by its acts because whether or not the noteholder is known to the borrower, the loan servicer is, and, it suggests, that is all the homeowner needs to know. Resp. Br. of MERS at 48-49 (Bain); Resp. Br. of MERS at 41 (Selkowitz). But there are many different scenarios, such as when homeowners need to deal with the holder of the note to resolve disputes or to take advantage of legal protections, where the homeowner does need to know more and can be injured by ignorance. Further, if there have been misrepresentations, fraud, or irregularities in the proceedings, and if the homeowner-borrower cannot locate the party accountable and with authority to correct the irregularity, there certainly could be injury under the CPA.[18]

---

[18] Also, while not at issue in these cases, MERS's officers often issue assignments without verifying the underlying information, which has resulted in incorrect or fraudulent transfers. *See* Zacks, *supra*, at 580 & n. 163 (citing Robo-Signing, Chain of Title, Loss Mitigation, and Other Issues in Mortgage Servicing: Hearing Before Subcomm. on H. and Cmty. Opportunity H. Fin. Servs. Comm., 111th Cong. 105 (2010) (statement of R.K. Arnold, President and Chief Executive Officer of

¶54 Given the procedural posture of these cases, it is unclear whether the plaintiffs can show any injury, and a categorical statement one way or another seems inappropriate. Depending on the facts of a particular case, a borrower may or may not be injured by the disposition of the note, the servicing contract, or many other things, and MERS may or may not have a causal role. For example, in *Bradford v. HSBC Mortgage Corp.*, 799 F. Supp. 2d 625 (E.D. Va. 2011), three different companies attempted to foreclose on Bradford's property after he attempted to rescind a mortgage under the federal Truth in Lending Act. All three companies claimed to hold the promissory note. Observing that "[i]f a defendant transferred the Note, or did not yet have possession or ownership of the Note at the time, but nevertheless engaged in foreclosure efforts, that conduct could amount to an [Fair Debt Collection Practices Act, 15 U.S.C. § 1692k,] violation," the court allowed Bradford's claim to proceed. 799 F. Supp. 2d at 634-35. As amicus notes, "MERS' concealment of loan transfers also could also deprive homeowners of other rights," such as the ability to take advantage of the protections of the Truth in Lending Act and other actions that require the homeowner to sue or negotiate with the actual holder of the promissory note. AG Br. at 11 (citing 15 U.S.C. § 1635(f); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1162-65 (9th Cir. 2002)). Further, while many defenses would *not* run against a holder in due course, they could against a holder who was not in due course. AG Br. at 11-12 (citing RCW 62A.3-302, .3-305).

¶55 If the first word in the third question was "may" instead of "does," our answer would be "yes." Instead, we answer the question with a qualified "yes," depending on whether the homeowner can produce evidence on each element required to prove a CPA claim. The fact that MERS claims to be a beneficiary, when under a plain reading of the

---

MERSCORP Inc.)). Actions like those could well be the basis of a meritorious CPA claim.

statute it was not, presumptively meets the deception element of a CPA action.

## CONCLUSION

¶56 Under the deed of trust act, the beneficiary must hold the promissory note and we answer the first certified question "no." We decline to resolve the second question. We answer the third question with a qualified "yes"; a CPA action may be maintainable, but the mere fact MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury.

MADSEN, C.J., and C. JOHNSON, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.